IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORI A. ARNOLD, | : |
|     Plaintiff | : |
| v. | :   CIVIL NO. 3:12-CV-02417 |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | :   (Judge Brann) |
|     Defendant | : |

**MEMORANDUM**

**Background**

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Lori A. Arnold's claim for social security disability insurance benefits and supplemental security income benefits.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Arnold met the insured status requirements of the Social Security Act through March 31, 2011.

Tr. 26, 28 159 and 166.[1]  In order to establish entitlement to disability insurance benefits Arnold was required to establish that she suffered from a disability[1] on or before that date. 42 U.S.C. §423(a)(1)(A), (c)(1)(B); 20 C.F.R. §404.131(a)(2008); see Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes).  It is designed to help aged, blind or other disabled individuals who have little or no income. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits.

Under 42 U.S.C. § 405(g) and relevant case law, the court is limited to reviewing the administrative record to determine whether the decision of the Commissioner is supported by substantial evidence.  "The substantial evidence standard is the standard of review for all factual issues.  It is not the standard of review for legal questions, which the court reviews de novo.  However, it has been held that an ALJ[']s errors of law denote[] a lack of substantial evidence."  Carolyn

---

[1] References to "Tr.__" are to pages of the administrative record filed by the Defendant as part of the Answer on February 7, 2013.

[1] A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).

2

A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts, 991 (2014)(footnote omitted).  Counsel for the parties are familiar with the five-step sequential evaluation process[2] that the Commissioner utilizes and the substantial evidence standard of review.[3]

---

[2]The Commissioner utilizes a five-step process in evaluating disability insurance benefits claims.  See 20 C.F.R. §§ 404.1520 and 416.920; Poulos v. Commissioner of Social Security, 474 F.3d 88, 91-92 (3d Cir. 2007).  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. At step five of the sequential evaluation process, the burden of production temporarily shifts to the Commissioner to produce vocational evidence demonstrating that there are a significant number of jobs in the national economy that the claimant, given his or her residual functional capacity, can perform. Once the Commissioner satisfies this limited burden of production, the burden shifts back to the claimant to prove that the Commissioner cannot rely on the vocational evidence.

[3]Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213.  In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).
     Substantial evidence exists only "in relationship to all the other evidence

Arnold is 43 years of age, has a high school education and is able to read, write, speak and understand the English language and perform basic mathematical functions. Tr. 34. Her past relevant work was as an office clerk described by a vocational expert as semiskilled, light work; a materials coordinator described as unskilled, light work; and a salvage laborer described as unskilled, medium work. Tr. 33.

Arnold protectively filed[4] her applications for disability insurance and supplemental security income benefits on December 29, 2009. Tr. 26, 148-154 and 166. Arnold claims that she became disabled on January 1, 2006, as the result of migraine headaches and musculoskeletal impairments, including impairments of the cervical spine and left knee. With respect to the cervical spine Arnold was diagnosed

---

in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

[4]Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

4

as suffering from "moderate to severe bilateral foraminal stenosis at C3-C4; mild to moderate bilateral foraminal stenosis C4-C5 and C5-C6." Tr. 267. With respect to the left knee Arnold was diagnosed as suffering from degenerative joint disease which was described as being at the end stage. Tr. 251 and 261.

Arnold's applications were initially denied by the Bureau of Disability Determination[5] on February 24, 2010. Tr. 26 and 86-94. On April 21, 2010, Arnold requested a hearing before an administrative law judge. Tr. 26 and 98-100. After about 11 months had passed, a hearing was held on March 24, 2011. Tr. 38-83. Arnold was represented by counsel at the hearing. Id. On April 4, 2011, the administrative law judge issued a decision denying Arnold's applications. Tr. 26-35. The administrative law judge found that Arnold was not disabled because she was able to perform a limited range of sedentary work and identified four positions she could perform: food and beverage order clerk, callout operator, final assembler and surveillance system monitor. Tr. 29 and 34.

The administrative law judge at step two of the sequential evaluation process found that Arnold suffered from the following severe impairments: "Left shoulder impingement syndrome, degenerative joint (acromioclavicular) disease of

---

[5]The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration. Tr. 86 and 90.

the left shoulder, degenerative joint disease of the right knee, degenerative disc disease (lumbar spine), migraines, hypertension, hyperlipidemia, obesity, right foot fracture (fifth metatarsal), and Irritable Bowel Syndrome[.]" Tr. 28.

The administrative law judge did not address in his decision two medical conditions raised in the record and rejected the opinion of a treating physician. The vocational expert testified that if the opinion of the treating physician regarding Arnold's work-related functional abilities was accepted as an accurate depiction of her abilities that she would be unemployable. There was no statement in the administrative record from a state agency physician or other physician delineating Arnold's work-related functional abilities, including her ability to sit, stand, walk, and lift and carry items.

Supporting and opposing briefs were submitted and the appeal[6] became ripe for disposition on June 7, 2013, when Arnold filed a reply brief.

For the reason set forth below we will remand the case to the Commissioner for further proceedings.

**Discussion**

The administrative record in this case is 412 pages in length, primarily

---

[6]Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

consisting of medical and vocational records. Arnold argues that the ALJ erred by failing to address two medical conditions revealed in the record and by rejecting a treating physician's opinion. Arnold further argues that the ALJ in setting his residual functional capacity failed to appropriately consider the medical evidence and his credibility, and the ALJ inappropriately relied on his own lay analysis of the medical records. We have thoroughly reviewed the relevant portions of the record and find substantial merit in Arnold's arguments.

The administrative law judge at step one of the sequential evaluation process found that Arnold had not engaged in substantial gainful work activity since January 1, 2006. Tr. 28.

Step two is the first point where the administrative law judge erred. At step two of the sequential evaluation process, the administrative law judge as stated earlier failed to address Arnold's cervical spine and left knee impairments. The administrative judge did not make a definitive determination as to whether or not Arnold suffered from (1) degenerative disc disease of the cervical spine which involved foraminal stenosis and (2) end stage degenerative joint disease of the left knee.

The Social Security regulations contemplate the administrative law judge considering whether there are any medically determinable impairments and then

when setting a claimant's residual functional capacity considering the symptoms of both medically determinable severe and non-severe impairments. 20 C.F.R. § 404.1529. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520©. If a claimant has no impairment or combination of impairments which significantly limit the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). A failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two. However, all of the medically determinable impairments both severe and non-severe must be considered at step two and then at step four when setting the residual functional capacity. The social security regulations mandate such consideration and this court has repeatedly so indicated. See, e.g., Christenson v. Astrue, Civil No. 10-1192, slip op. at 12 (M.D. Pa. May 18, 2011)(Muir, J.); Little v. Astrue, Civil No. 10-1626, slip op. at 19-21 (M.D.Pa. September 14, 2011)(Kosik, J.); Crayton v. Astrue, Civil No. 10-1265, slip op. at 32-35 (M.D.Pa. September 27, 2011)(Caputo, J.); Shannon v. Astrue, Civil No. 11-289, slip op. at 39-41 (M.D.Pa. April 11, 2012)(Rambo, J.); Bell v. Colvin, Civil No. 12-634, slip op. at 23-24

(M.D.Pa. Dec. 23, 2013)(Nealon, J.); 20 C.F.R. §§ 404.1523 and 404.1545(a)(2).

The failure of the administrative law judge to find the above referenced conditions - degenerative disc disease of the cervical spine with foraminal stenosis and end stage degenerative joint disease of the left knee - as medically determinable impairments, or to give an adequate explanation for discounting them, makes the administrative law judge's decisions at steps two and four of the sequential evaluation process defective.  The error at step two of the sequential evaluation process draws into question the ALJ's RFC assessment and the assessment of Arnold's credibility. The administrative law judge found that Arnold's medically determinable impairments could reasonably cause Arnold's alleged symptoms but that Arnold's's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible. Tr. 31. This determination by the administrative law judge was based on an incomplete and faulty analysis of all of Arnold's medically determinable impairments.  The error at step two is a sufficient basis to remand this case to the Commissioner for further proceedings because it calls into question the administrative law judge's assessment of Arnold's residual functional capacity as will be explained in more detail below

The administrative law judge rejected the opinion of Edward H. Lentz, D.O., a treating physician, regarding the physical functional abilities of Arnold.  Tr.

397-398. A vocational expert testified that if the limitations imposed by Dr. Lentz were accurate Arnold would be unemployable. Tr. 78-80.

The preference for the treating physician's opinion has been recognized by the Court of Appeals for the Third Circuit and by all of the federal circuits. See, e.g., Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000). When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the administrative law judge may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason." Id. In choosing to reject the evaluation of a treating physician, an administrative law judge may not make speculative inferences from medical reports and may reject treating physician's opinions outright only on the basis of contradictory medical evidence. Id. An administrative law judge may not reject a written medical opinion of a treating physician based on his or her own credibility judgments, speculation or lay opinion. Id. An administrative law judge may not disregard the medical opinion of a treating physician based solely on his or her own "amorphous impressions, gleaned from the record and from his evaluation of the [claimant]'s credibility." Id. As one court has stated, "Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." Schmidt v.

Sullivan, 914 F.2d 117, 118 (7th Cir 1990).

We recognize that the residual functional capacity assessment must be based on a consideration of all the evidence in the record, including the testimony of the claimant regarding her activities of daily living, medical records, lay evidence and evidence of pain. See Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112, 121-122 (3d Cir 2000). However, rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant. See Doak v. Heckler, 790 F.2d 26, 29 (3d Cir.1986)("No physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence."); 20 C.F.R. § 404.1545(a). As two commentators have explained:

> Sometimes administrative law judges assert that they - and not physicians - have the right to make residual functional capacity determinations. In fact, it can reasonably be asserted that the ALJ has the right to determine whether a claimant can engage in sedentary, light, medium, or heavy work. The ALJ should not assume that physicians know the Social Security Administration's definitions of those terms. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination based on those administrative definitions and is reserved to the Commissioner. However, the underlying determination is a medical determination, i.e., that the claimant can

> lift five, 20, 50, or 100 pounds, and can stand for 30 minutes, two hours, six hours, or eight hours. That determination must be made by a doctor. Once the doctor has determined how long the claimant can sit, stand or walk, and how much weight the claimant can lift and carry, then the ALJ, with the aid of a vocational expert if necessary, can translate that medical determination into a residual functional capacity determination. Of course, in such a situation a residual functional capacity determination is merely a mechanical determination, because the regulations clearly and explicitly define the various types of work that can be performed by claimants, based upon their physical capacities. Thus, while agency regulations provide the ultimate issues such as disability and RFC are reserved to the agency, it may not reject a physician's medical findings that determine the various components and requirements of RFC.

Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts, 344-345 (2014)(emphasis added); see also Woodford v. Apfel, 93 F.Supp.2d 521, 529 (S.D.N.Y. 2000)("An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities."); Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y. 1996)("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required."). The administrative law judge cannot speculate as to a claimant's residual functional capacity but must have medical evidence, and generally a medical opinion regarding the functional

capabilities of the claimant, supporting his determination. Id.

In this case there was no assessment of the functional capabilities of Arnold from a physician which supported the administrative law judge's residual functional capacity assessment and the bare medical records and other non-medical evidence were insufficient for the administrative law judge to conclude that Arnold had the residual functional capacity to engage in a limited range of sedentary work.[7]

In rejecting the opinions of Dr. Lentz, the treating physician, the administrative law judge did not give an adequate explanation for doing so. The administrative law judge engaged in his own lay analysis of the medical records. This was clear error.

Our review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) vacate the decision of the Commissioner and remand the case

---

[7] The administrative record did contain an RFC assessment from a non-medical state agency adjudicator. Tr. 334-339. This court has repeatedly stated that reliance on such a statement is inappropriate and the ALJ in this case did not rely on that statement. See, e.g., Ulrich v. Astrue, Civil No. 09-803, slip op. at 17-18 (M.D.Pa. December 9, 2009)(Muir, J.); Spancake v. Astrue, Civil No. 10-662, slip op. at 15 (M.D. Pa. December 23, 2010)(Muir, J.); Gonzalez v. Astrue, Civil No. 10-839, slip op. at 16 (M.D.Pa. January 11, 2011)(Muir, J.); Peak v. Astrue, Civil No. 10-889, slip op. at 25 (M.D.Pa. January 24, 2011)(Muir, J.); see also Dutton v. Astrue, Civil No. 10-2594, slip op. at 22 n. 32(M.D.Pa. January 31, 2012)(Munley, J.); Demace v. Astrue, Civil No. 11-1960, slip op. at 36-37(M.D.Pa. April 25, 2013)(Munley, J.).

```
```

to the Commissioner for further proceedings.

An appropriate order will be entered.

                <u>s/Matthew W. Brann</u>
                Matthew W. Brann
                United States District Judge

Dated: March 11, 2014